UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21958-CIV-ALTONAGA/O'Sullivan

**FABIO PEREZ**,

    Plaintiff,

v.

**FRANCISCO CAMBEYRO**, *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants, Francisco Cambeyro ("Cambeyro") and F.C.D. Group, LLC's (collectively, "Defendants[']") *Amended* Motion to Dismiss . . . ("Motion") [ECF No. 19], filed July 15, 2015, seeking dismissal of Plaintiff, Fabio Perez's ("Perez[']s") Complaint ("Complaint") [ECF No. 1]. After the Court struck Perez's first response (*see* Aug. 6, 2015 Order [ECF No. 27]), Perez filed an Amended Response . . . ("Response") [ECF No. 31] on August 11, 2015; Defendants filed an untimely Reply . . . ("Reply") [ECF No. 32] on August 24, 2015. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I.  BACKGROUND[1]

This matter arises out of a housing dispute regarding reasonable accommodations under the Fair Housing Act ("FHA"), 42 U.S.C. section 3601 *et seq.* Perez lives alone in a second-floor apartment within a complex owned and managed by Defendants, under what was originally an oral, month-to-month lease. (*See* Compl. ¶¶ 3, 5, 11). When Perez moved in on August 20,

---

[1] The facts alleged in the Complaint are accepted as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (noting when reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true).

2014, Cambeyro informed him the elevators were only available for moving in and moving out. (*See id.* ¶¶ 9, 10). In accordance with that policy, Cambeyro unlocked and turned on the elevator so Perez could move in (*see id.* ¶ 12), and then turned it off once Perez finished moving (s*ee id.* ¶ 13). Perez accessed his second-floor apartment by the stairs on a daily basis. (*See id.* ¶ 14).

Perez suffers from cardiovascular disease and congestive heart failure. (*See id.* ¶ 6). Perez suffered a major heart attack on April 5, 2015, severely damaging his heart and limiting his mobility. (*See id.* ¶ 8). To receive rent while Perez was recovering, Cambeyro visited him in his hospital room and personally withdrew the money owed using Perez's ATM card and PIN. (*See id.* ¶ 19).

A few days after Cambeyro's visit, Perez learned from his doctor he would no longer be able to walk up the stairs to his apartment. (*See id.* ¶ 20). Perez called Cambeyro to ask the elevator be turned on for his use, but Cambeyro refused. (*See id.*). Perez obtained a letter from his doctor explaining Perez needed to use the elevator, and called Cambeyro a second time to inform him of the letter and need for elevator access, but Cambeyro refused. (*See id.* ¶ 21). Perez then contacted a lawyer, who sent Cambeyro a letter demanding the elevator be turned on as an accommodation under the FHA (*see id.* ¶ 22), and followed up with a call during which Cambeyro told the lawyer "the elevators were 'always on', [sic] and could not be controlled from the elevator." (*Id.* ¶ 23).

When Perez was discharged from the hospital on May 8, 2015, he went to a friend's house for five days because the elevator was off and it was impossible to reach his apartment until the elevator was turned on for him on May 13, 2015. (*See id.* ¶ 25). When Perez entered his apartment that day, his apartment was clean. (*See id.* ¶ 26). Two days later, Cambeyro informed Perez he would be coming by with a new, written lease to sign. (*See id.* ¶ 27). The

new lease contained a number of disagreeable terms beyond those previously included in the oral agreement. (*See generally* Ex. B to Compl. [ECF No. 1-2]). Cambeyro "threatened" Perez the new terms would apply if he did not move out. (Compl. ¶ 28). During this visit, Cambeyro also explained the reason the elevators were not on all the time was Cambeyro did not want to pay a $500 monthly elevator maintenance agreement required to make the elevator available for regular use. (*See id.* ¶ 29).

The following day, Cambeyro returned to Perez's apartment with the new lease and three neighbors to witness the signing. (*See id.* ¶ 30). Cambeyro began moving furniture around for roughly one hour, looking for cockroaches, and for the first time raised concerns about the cleanliness of Perez's apartment.[2] (*See id.* ¶¶ 32–33). The apartment was clean because while Perez was in the hospital, his son had agreed to watch his cat and clean the apartment (*see id.* ¶ 17); Perez additionally hired a housekeeper to clean the apartment (*see id.* ¶ 18). Nonetheless, Cambeyro told Perez, "This is not an assisted living facility . . . you have to find one . . . you have to move out." (*Id.* ¶ 31 (ellipses in original)).

The morning after this interaction, Perez was "not able to move out of his bead [sic]," so he called an ambulance, was transported down the elevator by paramedics, and hospitalized for a second time. (*Id.* ¶ 34 (alteration added)). While Perez was in the hospital, on May 17, 2015, Cambeyro posted a seven-day notice to cure or quit on his door, claiming a number of violations regarding the cleanliness of Perez's apartment and his cat. (*See id.* ¶¶ 35–36).

On the basis of these factual allegations, Perez brings three claims for relief. Count I alleges a failure to provide reasonable accommodation in violation of 42 U.S.C. section 3604(f). Count II alleges disparate treatment in violation of 42 U.S.C. section 3604(f)(1). Count III

---

[2] Defendants never inspected Perez's apartment from the date he moved in during August 2014 until April 2015. (*See* Compl. ¶ 16).

3

alleges retaliation pursuant to 42 U.S.C. section 3617.  Defendants move to dismiss all counts for failure to state a claim for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

## III.  ANALYSIS

### A.  Count I: Failure to Provide Reasonable Accommodation

To state a claim of failure to provide reasonable accommodation of a disability pursuant to 42 U.S.C. section 3604(f)(3)(B), a plaintiff must allege: (1) a disability or handicap recognized by the FHA; (2) a request for reasonable accommodation; (3) the necessity of that accommodation to the use and enjoyment of the dwelling; and (4) a defendant's refusal to make the requested reasonable accommodation.  *See Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d

1201, 1218-19 (11th Cir. 2008)). "Whether an accommodation is reasonable depends on specific circumstances." *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998) (citation omitted). According to Defendants, Perez fails to allege "(1) he made a *request* for a reasonable accommodation that would provide him with an *equal* opportunity to use and enjoy his dwelling or (2) that Defendants have *refused* to provide him with a reasonable accommodation." (Mot. 6 (emphasis in original)). Defendants also argue Perez fails to allege his request was reasonable (*see id.* 9, 11), and necessary (*see id.* 12).

      i. Request

Defendants assert "[c]ase law under the . . . Americans with Disability [sic] Act," ("ADA") 42 U.S.C. section 12101 *et seq.*, "is used for guidance in evaluating reasonable accommodation claims under the FHA," and "[t]he Eleventh Circuit has held that under the . . . ADA, 'the duty to provide reasonable accommodation is not triggered unless [a] specific demand for an accommodation has been made.'" (Mot. 7 n.2 (alterations added) (quoting *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (citation omitted))). In support of their position Perez does not allege he made a request for a reasonable accommodation, Defendants rely on *Hawn*, insisting "Perez fails to allege that Defendants had notice that the requested accommodation was reasonably necessary." (Mot. 9).

*Hawn* is clearly distinguishable. In *Hawn*, the plaintiff lived in a condominium with a no-pets policy. *See* 347 F. App'x at 465. Knowing the policy, the plaintiff acquired a dog and wrote to the defendant condominium board, informing it of his acquisition and recommending the board change its policy to allow a six-month trial period to see if a pet causes any problems. *See id.* The plaintiff did not claim any disability or need for a service animal, nor did he refer to the dog as anything but a pet or companion. *See id.* After the board did not answer, plaintiff

sent a second letter, this time claiming physical and psychiatric disabilities and including documentation such as doctors' notes and a letter certifying the dog was a registered service animal. *See id.* at 466.

Upon receiving the letter, defendants informed plaintiff they would need additional information in order to more fully evaluate the request for accommodation. *See id.* After plaintiff repeatedly failed to respond to requests for more information, defendants ultimately denied the request. *See id.* In affirming summary judgment, the court held plaintiff's submissions failed to create a genuine issue of material fact as to the defendants' knowledge of plaintiff's handicap and need for accommodation, because defendants' duty to accommodate was not triggered given plaintiff's failure to allow defendants "the ability to conduct a meaningful review of the requested accommodation . . . ." *Id.* at 468 (internal quotation marks and citation omitted; ellipsis in original).

Defendants argue they, like the board in *Hawn*, "did not have sufficient knowledge of tenant's disability and the necessity for an accommodation to trigger defendants [sic] duty to provide an accommodation even where the information provided included documents and letters from doctors." (Mot. 8 (emphasis omitted). According to Defendants, *Hawn* stands for the general proposition "*medical documentation* filled out by doctors containing their opinions of [a] plaintiff's disability . . . [is] inadequate to allow [a] defendant to conduct a meaningful review of [a] plaintiff's disability . . . ." (*Id.* 9 (alterations added; emphasis in original)).

Defendants' reliance on *Hawn* is misplaced. *Hawn* was an appeal from a grant of summary judgment. Putting aside the difference in procedural posture, the determinative factor in *Hawn* was not the insufficiency of doctors' notes, but rather plaintiff's failure to respond to defendants' requests for additional information; in other words, the plaintiff's thwarting of

6

defendants' unmistakably invoked and affirmatively pursued opportunity to investigate the reasonableness and necessity of the requested accommodation. *See* 347 F. App'x at 467–68. Here, and unlike the facts in *Hawn*, Perez alleges he offered additional information but was still rebuffed. (*See* Compl. ¶ 21). Perez alleges he made numerous requests for accommodation, that — in contrast to *Hawn* — Defendants refused immediately, without bothering to inquire further.[3] (*See generally* Compl.).

Defendants' arguments about notice are entirely unavailing. The Complaint alleges Cambeyro visited Perez's hospital room, personally withdrew money using Perez's ATM card and PIN because Perez could not walk (*see* Compl. ¶ 19), and thereafter received repeated requests for elevator access, including from counsel, on account of decreased mobility following Perez's hospitalization (*see id.* ¶¶ 20, 21). Perez has pleaded facts sufficient to support a reasonable inference Defendants had notice he was requesting a legitimate medical accommodation. *See Hawn*, 347 F. App'x at 467 (noting "the defendant must know or reasonably be expected to know of the existence of both the handicap and the necessity of the accommodation" (citation omitted)). Defendants' apparent decision to reject requests without investigating does not affect whether Perez has sufficiently pleaded a request.

    ii. Refusal

Defendants somewhat incredibly argue Perez "fails to allege facts sufficient to establish that Defendants 'refused' to provide an accommodation." (Mot. 7). The Complaint alleges Defendants refused Perez's repeated requests for elevator access, made both by Perez personally and through his attorney. (*See* Compl. ¶¶ 20–25). Further, according to the Complaint, at no

---

[3] Even if, as Defendants argue, the need for the specific accommodation was not readily apparent at the time of the hospital visit (*see* Mot. 9) and Defendants did not know the specifics of Perez's medical condition (*see* Reply 3–6), Perez alleges Defendants knew of an ongoing medical issue serious enough to require hospitalization. (*See* Mot. 9 (citing Compl. ¶¶ 17, 19); Reply 3–6).

point did Defendants express any interest in investigating Perez's request, and the only time constraint on Defendants' ability to conduct an investigation was their own prompt rejections. (*See generally* Compl.). In fact, Defendants rejected the request immediately following Perez's unprompted offer of additional proof of his need. (*See id.* ¶ 21). Perez has pleaded sufficient facts of Defendants' refusal.

### iii. Reasonableness

Although Defendants' reasonableness "argument" generally consists of quotations from case law without explanation (s*ee* Mot. 11), Defendants appear to argue Perez's request is unreasonable because allowing him to use the elevator would either be unequal (*see id.* (quoting 24 C.F.R. § 100.204 (citation corrected))), or impose an undue financial burden (*see id.* (quoting *Schwarz*, 544 F.3d at 1220)). Further, Defendants assert:

> Plaintiff also fails to allege that Defendants' concern that elevators were safe and functioning properly for use by tenants was mere pretext for the alleged discrimination, and not legitimate non-discriminatory reasons [sic] . . . . Plaintiff, therefore, fails to allege facts that satisfy the reasonableness prong of a claim under FHA [sic] for reasonable accommodation.

(*Id.* 11–12 (alterations added; internal citation omitted)). These arguments fundamentally misunderstand the appropriate inquiry, particularly at the motion to dismiss stage.

The reasonableness of an accommodation is "highly fact-specific, requiring case-by-case determination." *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002) (internal quotation marks and citation omitted). As even Defendants acknowledge, it "requires a balancing of the parties [sic] needs." (Mot. 11 (citing *Bhogaita v. Altamonte Heights Condo. Ass'n. Inc.*, 756 F.3d 1277, 1289 (11th Cir. 2014) (citation corrected))).

Perez alleges: 1) his condition now requires the use of an elevator to reach — *i.e.* obtain equal access to — his apartment (*see* Compl. ¶ 20); and 2) the building already has an elevator

(*see id.* ¶¶ 25, 34). According to Cambeyro, it costs $500 per month to provide elevator access.[4] (*See id.* ¶ 29). Defendants have not cited any law to suggest it is unreasonable to request elevator access in a building that already has an elevator or an accommodation that costs $500 per month (assuming the figure given to Perez by Cambeyro is accurate). *Cf. Schwarz*, 544 F.3d at 1220 (stating an accommodation is unreasonable if it would impose an undue financial and administrative burden on the housing provider or fundamentally alter the nature of the provider's operations). Perez states sufficient facts to support his allegation the requested accommodation is reasonable. *See Davis v. Lane Mgmt., LLC*, 524 F. Supp. 2d 1375 (S.D. Fla. 2007) (awarding damages to a quadriplegic man whose access to his second floor apartment was frustrated by his landlord's refusal to make financially feasible elevator repairs). In any event, this type of reasonableness determination under the FHA "requires a factual inquiry not appropriate at the motion to dismiss stage." *Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, Inc.*, Case No. 12-80040-CIV, 2012 WL 1570063, at *5 (S.D. Fla. May 2, 2012).

  iv. Necessity

The FHA requires reasonable accommodations which "may be necessary . . . to afford equal opportunity to use and enjoy a dwelling." (Mot. 12 (emphasis omitted; ellipsis in original) (quoting *Schwarz*, 544 F.3d at 1226) (citation omitted)). Defendants assert an accommodation should provide equal opportunity, rather than "extend a preference." (*Id.* 13 (citation omitted)). Additionally, Defendants argue Perez "fails to allege that other tenants in the building had keys to the elevator. Providing Plaintiff with a key would provide preferential, not equal treatment." (*Id.* 13).

---

[4] Defendants argue "Perez fails to allege that the elevator was fully functioning at the time the request was made." (Mot. 11). To the contrary, Perez alleges the elevator was functional but for Defendants' withheld access, as evidenced by Perez's use of the elevator to move in (*see* Compl. ¶ 12) and access his apartment upon leaving the hospital (*see id.* ¶ 25); as well as the paramedics' use of the elevator to take him back to the hospital (*see id.* ¶ 34).

9

This "equal treatment" argument shows Defendants completely misunderstand the nature of an accommodation. All accommodations inherently take the form of assistance for the disabled individual that other people may not need nor have. That is not preferential treatment, because what matters is the end result; the FHA concerns itself with equal opportunity for housing — not equal access to elevator keys.

Perez alleges his disability renders him unable to access his apartment without use of the elevator. (*See* Compl. ¶¶ 8, 20). If he cannot access his apartment, he lacks equal opportunity for use and enjoyment. *See Schwarz*, 544 F.3d at 1226. Defendants' analogies to elevator cases in the education context are inapposite and unpersuasive. (*See* Mot. 13–14). The ability to reach one's apartment — if at all — by elevator does not extend Perez's access "above that provided to a nonhandicapped person with respect to matters unrelated to the handicap." (*Id.* 13 n.3). Perez has alleged facts sufficient to support the claim his requested accommodation is necessary.

B. **Count II: Disparate Treatment**

To state a claim of disparate treatment under section 3604(a) of the FHA, a plaintiff must allege "he has actually been treated differently than similarly situated non-handicapped people." *Schwarz*, 544 F.3d at 1216 (citation omitted). In other words, a plaintiff must allege "'defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA.'" *Head v. Cornerstone Resid. Mgm't, Inc.*, No. 05-80280-CIV, 2010 WL 3781288, at *7 (S.D. Fla. Sept. 22, 2010) (quoting *Bonasera v. City of Norcross*, 342 F. App'x 581, 584 (11th Cir. 2009)).

Defendants challenge the disparate treatment claim in Count II on the basis the allegations and supporting exhibits "negate" each other and contradict the Complaint. (*Id.* 15). Specifically, Defendants argue because Florida law authorizes termination of an oral month-to-

month lease with 15-days' notice (*see id.* (citing FLA. STAT. § 83.57(3))), and because the new contract "extended Plaintiff's lease through August 2015, requiring at the very least 30-day-notice to terminate[,] Plaintiff's allegations that Defendant [sic] attempted to terminate his leasehold and failed to renew lease [sic] are, therefore, negated." (*Id.* (alterations added; internal record citations omitted) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974))).

Defendants place great stock in their argument the Complaint contradicts itself by alleging both Defendants' "termination" of, and "failure to renew," the lease. (*Id.* 15).[5] Viewing the Complaint in the light most favorable to Perez, the decision not to continue an oral month-to-month lease may reasonably be described as terminating or failing to renew, and Defendants offer no law to suggest compelling Perez to sign a new, more restrictive lease cannot constitute a violation of the FHA. Similarly, the offer of a different lease does not inherently contradict or negate Perez's allegation Defendants terminated or failed to renew the existing leasehold. (*See* Compl. ¶ 27).

Additionally, Defendants' arguments regarding proper notice and landlords' rights (*see* Mot. 14) are meritless. Defendants' conduct — whether within the legal authority of a landlord or not — may still violate the FHA if that conduct discriminates against a renter because of his handicap. *See* 42 U.S.C. § 3604(f)(1). Discriminatory treatment may be found when the discriminatory actions are otherwise legal; the FHA was enacted specifically because landlords were using their otherwise legal discretion to discriminatory ends. *See Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Proj., Inc.*, 135 S. Ct. 2507, 2521 (2015) ("[T]he FHA . . . was

---

[5] In their untimely Reply, Defendants note, as does the Court, Perez fails to address this argument in his amended Response (*see* Reply 5–8), despite the Court's explicit instruction that Perez respond to each of Defendants' arguments — naming this argument specifically. (*See* Aug. 6 Order 1).

enacted to eradicate discriminatory practices within a sector of our Nation's economy." (citation omitted; alterations added)). Perez's allegations of disparate treatment based on discriminatory intent (*see* Compl. ¶¶ 49–58) are sufficient to state a claim.[6]

### C. Count III: Retaliation

Defendants challenge Count III, stating a claim for retaliation, on the basis Plaintiff has not demonstrated they initiated eviction proceedings for any reason other than Perez's failure to maintain his unit in a safe and sanitary condition. (*See* Mot. 16). A claim for retaliation under the FHA requires a plaintiff allege: 1) the plaintiff engaged in statutorily protected conduct; 2) the defendant took adverse action against the plaintiff; and 3) a causal connection exists between the adverse action and the protected activity. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (analogizing an FHA retaliation claim to a retaliation claim under the ADA). For example, "a plaintiff sufficiently states a retaliation claim where he alleges that the defendant threatened to terminate the plaintiff's lease, mentally antagonized the plaintiff, and levied frivolous fines in retaliation for the plaintiff's attempts to receive accommodations and for filing complaints with housing agencies." *Hopler v. Crystal Tower, Inc.*, Case No. 13-62465-CIV, 2014 WL 3894261, at *4 (S.D. Fla. June 20, 2014) (citation omitted). According to Defendants, their decision to evict Perez "cannot be retaliatory as a matter of law" (Mot. 16 (quoting *Head v. Cornerstone Residential Mgmt. Inc.*, Case No. 05-80280-CIV, 2010 WL 3781288, at *14 (S.D. Fla. Sept. 22, 2010)), because the eviction proceedings were initiated prior to Perez's exercise of

---

[6] In their Motion, Defendants devote the entirety of their discussion regarding this count to the purported contradiction discussed above, as well as the existence of a non-discriminatory purpose for their actions. (*See* Mot. 14–16). In their untimely Reply, Defendants more directly argue Perez fails to explicitly allege other tenants were not also treated in this manner. (*See* Reply 6). Yet, following Perez's hospitalization and request for accommodation, Cambeyro for the first time conducted an hour-long search of the apartment to find a pretext for eviction, and told Perez he had to move out because the apartment was not an assisted living facility. (*See* Compl. ¶¶ 30–33). These facts provide a sufficient basis to support a reasonable inference of disparate treatment and discriminatory intent. *See Bonasera v. City of Norcross*, 342 F. App'x 581, 584 (11th Cir. 2009).

a statutory right (*see id.* (citing *Farrell v. Cassano*, 34 F. App'x 11, 14 (2d Cir. 2002))). The Complaint in no way supports this last argument.

Defendants insist eviction was warranted because of unsanitary conditions. (*See* Mot. 16–17 (citing FLA. STAT. § 83.52)). They argue the alleged "conditions came to Defendants' attention on March 23, 2015 while Plaintiff's son was caring for the Plaintiff's cat at Plaintiff's request." (*Id.* 17 (citing Compl. ¶ 17)). But the Complaint does not allege unsanitary conditions, Defendants' knowledge of them, or the March 23, 2015 date at all. Defendants once again ignore the standard governing a motion to dismiss, relying on purported facts that have not been pleaded and that even contradict the Complaint. (*See, e.g.*, Compl. ¶¶ 17 (alleging Perez's son was cleaning the house in Perez's absence), 26 (alleging the house was clean when Perez returned because he had hired a housekeeper)).

Defendants concede they initiated the eviction action during Perez's second hospitalization, which began May 17, 2015. (*See* Mot. 17 (citing Compl. ¶ 35)). They also concede Perez's requests for accommodation were made earlier in April. (*See id.* (citing Compl. ¶¶ 19, 20)). By those facts alone, based on the standard Defendants themselves lay out, the eviction action did not precede the invocation of statutory rights.

Defendants nevertheless incorrectly argue the "basis" for their eviction preceded the invocation of statutory rights and therefore precludes a finding of retaliation. (Mot. 17; Reply 8 (citing *Head*, 2010 WL 3781288, at *14)). *Cf. Head*, 2010 WL 3781288 at *14 (court granted defendants summary judgment because it was "*undisputed* that Defendants first became aware of [the discrimination complaint asserting statutory rights] on or about February 17, 2010, when Plaintiff's [sic] charge of discrimination was received. That date is ten days after [a defendant] wrote to [the plaintiffs] that it would not accept rent for February." *Id.* at *14 (alterations and

emphasis added)). Not only does the Complaint fail to state the date Defendants discovered unsanitary conditions, it alleges those conditions never existed. (*See* Compl. ¶ 26). Perez has pleaded facts sufficient to state a claim for retaliation.

## IV. CONCLUSION

Given the foregoing analysis, it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 19]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 1st day of September, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record